[Civ. No. 3363.    Second Appellate District, Division One.—December 2, 1920.]

## CITRUS SOAP COMPANY (a Corporation), Respondent, v. PEET BROS. MFG. CO. (a Corporation), Appellant.

[1] CONTRACTS—DELIVERY OF GOODS "AS MADE"—REASONABLE ACCUMULATION FOR SHIPMENT.—A provision in a contract for the sale of a number of drums of crude glycerine that such goods are to be delivered "as made" is not an agreement to ship one drum at a time, but a reasonable accumulation for shipment will be allowed.

[2] ID.—SALE OF GLYCERINE—DELAY IN DELIVERY—CAUSE—EVIDENCE — FINDINGS — APPEAL. — In this action to recover damages for breach of a contract for the purchase by defendant from plaintiff of a number of drums of crude glycerine, the conflict in the evidence was such that the appellate court could not say that the evidence was insufficient to sustain the trial court's finding that plaintiff's failure to deliver all of the glycerine prior to a given date specified in the contract was caused by a certain quarantine due to an epidemic of Spanish influenza and the consequent closing of its business for a time causing delay in production.

[3] ID.—PERFORMANCE—TIME.—In this action to recover damages for breach of a contract for the purchase by defendant from plaintiff of a number of drums of crude glycerine, the trial court was justified in finding that the notice of delay in production and shipment of the goods because of a certain quarantine due to an epidemic of Spanish influenza, as given by plaintiff, sufficiently complied with the requirements of the contract relating to the contingency of delay in performance thereof; and such contingency having arisen, and plaintiff having given due notice thereof, as required by the contract, it was entitled to perform the contract within a reasonable time after the date of delivery specified therein.

APPEAL from a judgment of the Superior Court of San Diego County. S. M. Marsh, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ramsey Probasco and Robinson & Sizer for Appellant.

Bischoff & Thompson for Respondent.

CONREY, P. J.—Action to recover damages for breach of a contract for the sale of merchandise bought by defendant from plaintiff. The plaintiff recovered judgment, from which judgment the defendant appeals.

Under date of November 7, 1918, plaintiff sold and agreed to deliver to the defendant, "Sellers usual good quality Soap lye Crude glycerine"; the quantity specified being eleven to twelve drums, weighing approximately eleven hundred pounds net each. The place of delivery was Berkeley, California. The goods were to be delivered "as made, but entire delivery to be completed prior to December 31, 1918." Glycerine was made by plaintiff as a by-product in the manufacture of washing-powder.

The contingency of delay in performance of this contract was covered as follows: "This contract is made subject to suspension in case of fire, flood, explosion, strike or unavoidable accident to the machinery or the works of the producers or receivers of this material, or from any interference in plant by reason of which either buyers or sellers are prevented from producing, delivering or receiving the goods and in such event the delivery thus suspended is to be made after such disabilities have been removed; otherwise to be fulfilled in good faith. Notice, with full particulars and the probable term of the continuance of such disability, shall be given to the other party hereto, within ten days of the date of the occurrence of such disability."

Under this contract the plaintiff delivered prior to December 31st, three drums, which were accepted. The remaining nine drums were shipped by the plaintiff from San Diego as follows: Four drums shipped December 21st, arrived at Berkeley December 31st; three drums shipped December 28th, arrived at Berkeley January 2d; two drums shipped December 30th, arrived at Berkeley January 7th. Acceptance of these nine drums was refused. The damages awarded are the difference between the agreed price of thirty cents per pound and eleven cents per pound, the market value of the glycerine at the time of defendant's refusal to accept and pay therefor.

The court found that the shipments were made and the dates of arrival at Berkeley were as above set forth; nevertheless, the court also found that "said goods were shipped and delivered in all respects in conformity with said con-

tract of sale." Appellant excepts to this finding and claims that there is no evidence to sustain such finding, since it is an established fact that the nine drums which appellant refused to accept did not arrive at the agreed place of delivery before the thirty-first day of December, 1918.

But the court further found as follows: "That the factory and place of business of plaintiff is in the city of San Diego, state of California. That during the months of November and December, 1918, there was prevalent in the city of San Diego an epidemic of Spanish influenza. That on December 5, 1918, the common council of the city of San Diego, at the request of the board of health of San Diego, to protect the health of the people of San Diego adopted a quarantine ordinance No. 7587, entitled 'An Ordinance Establishing a General Quarantine within the City of San Diego, California,' providing that all factories and places of business, including the factory and place of business of plaintiff, should be closed for four days. That plaintiff in compliance with the provisions of said ordinance, closed its factory and place of business for a period of four days, beginning with December 6, 1918. That on account of such interference plaintiff was further interrupted in the manufacture of glycerine for a period of five days. That said plaintiff on account of said interference was not able to produce and manufacture said glycerine and make delivery of nine (9) drums thereof prior to December 31, 1918. That the failure of plaintiff to deliver said glycerine prior to December 31, 1918, and all the delay in arrival and delivery at Berkeley, California, was due to said interference caused by the enforcement of said ordinance."

Appellant contends that there is no evidence to excuse plaintiff's failure to deliver the agreed amount of glycerine prior to December 31st. First, it is argued that the evidence shows without contradiction that the period of interference with plaintiff's manufacture and delivery of the glycerine, to wit, nine days, as found by the court, was not sufficient to prevent the plaintiff from delivering the goods within the agreed period of time if reasonable diligence to that end had been used. The plaintiff's vice-president testified: "We began to produce crude glycerine for the purpose of fulfilling this contract about November 11, 1918. We commenced the manufacture of glycerine four days

Dec. 1920.]    CITRUS SOAP CO. v. PEET BROS. MFG. CO.    249

after the contract was executed, and we made about three drums a week.'' At that rate of manufacture, practically the whole amount required by the contract would have been produced by the sixth day of December, the date when the interference by reason of influenza first occurred. The complete resumption of business by plaintiff is established as of date December 15th. Appellant contends that on these facts, established by the plaintiff's own evidence, the plaintiff's noncompliance with the contract is proved and that there is no evidence sufficient to sustain the contrary finding; that according to this evidence all of the glycerine shipped on December 21st and December 28th must have been on hand prior to December 6th, and should have been shipped at such time, since the agreement was to make shipment of the merchandise as made; that since business was fully resumed on the 15th of December, no sufficient reason can be shown to exist justifying the delay in shipping the last two drums until December 30th, or even the shipment as made on December 21st and 28th.

On the other hand, there is evidence tending to prove that the rate of production was less than three drums per week, and that at the time the quarantine went into effect on December 6th, the plaintiff had only two drums on hand. These were not shipped until two weeks later, December 21st, when four drums were shipped, and the others followed as above stated. [1] But the agreement to ship ''as made'' was not an agreement to ship one drum at a time. A reasonable accumulation for shipment would be allowed. The evidence showed that this was not at all unusual. [2] The conflict in the evidence was such that we are not able to say that the evidence is insufficient to sustain the court's finding that plaintiff's failure to deliver all of the glycerine prior to December 31st was caused by the quarantine and consequent delay in production.

[3] Appellant further contends, however, that the evidence is insufficient to establish another fact essential to respondent's right of recovery, in this, that respondent did not give notice of the interference in operation of its plant, and probable continuance of delivery, as required by the contract. The court found that plaintiff gave notice in writing, in due time, and held that the notice sufficiently complied with the requirements of the contract. Said

notice was given in due time, and receipt thereof by appellant is admitted. It was in the form of a letter, dated December 9, 1918, wherein respondent said: ''Please be advised that we have been forced to close down by the health authorities due to the quarantine established in San Diego against the influenza. The quarantine went into effect Friday morning, the 6th of December, and we may be compelled to take advantage of the contingency clause of our contract. However, we have finished six drums of the glycerine, three of which we have already shipped, and we are in hopes of being able to deliver the entire amount by December 31st.''

Appellant claims that this was not the notice required by the contract, because it failed to state the probable term of disability, and because it further stated that respondent hoped to be able to deliver the entire amount by the specified date. While the notice did not in terms set out the number of days of delay in production and shipments which would probably result from the quarantine, it did imply that the delay might carry the time of completion of deliveries to a date later than December 31st, although appellant hoped that this result might not follow. The contract did not require more than that reasonable warning be given of the fact of delay, the nature of the cause thereof, and the probable extent of interference with the timely performance of the seller's obligation. The notice given was a reasonable attempt, in good faith, to meet these requirements. It does not appear that appellant objected to the sufficiency thereof, until the point was raised in the defense of this action. We are of the opinion, therefore, that under the terms of the contract, respondent was entitled to perform the contract within a reasonable time after December 31st. Since this was done, the defendant was bound to perform the contract, and should be held liable for its breach thereof.

The judgment is affirmed.

Shaw, J., and James, J., concurred.